## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

JIMMY JOE HARRIS,                    )
                                     )
            Plaintiff,     )
                                     )
v.                                   )    Case No. CIV-14-324-JHP-KEW
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of Social               )
Security Administration,             )
                                     )
           Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff Jimmy Joe Harris (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act.  Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled.  For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); <i>see also</i>, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 25, 1968 and was 44 years old at the time of the ALJ's decision.  Claimant completed his education through the ninth grade.  Claimant has worked in the past as a pellet mill operator.  Claimant alleges an inability to work

beginning June 4, 2009 due to limitations resulting from hypertension and chronic pain in the neck and back.

## Procedural History

On June 4, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration.

On November 5, 2012, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing in Tulsa, Oklahoma. On December 26, 2012, the ALJ issued an unfavorable decision. The Appeals Council declined to review the decision on June 6, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform his past relevant work as a pellet mill operator.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) improperly

4

relying upon Claimant's use of narcotic pain medications to which he was addicted and should have stopped taking to conclude his pain was not severe enough to prevent work; and (2) failing to properly evaluate the opinion of Claimant's treating physician.

## Pain Evaluation

In his decision, the ALJ determined Claimant suffered from the severe impairment of degenerative disc disease of the spine. (Tr. 14). The ALJ concluded Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently, could stand/walk for at least six hours total in an eight hour workday, and could sit for at least six hours in an eight hour workday. (Tr. 15). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of parking lot attendant, sorter, and auto wash attendant. (Tr. 21). Based upon this finding, the ALJ determined Claimant was not under a disability. (Tr. 22).

Claimant contends the should not have relied upon Claimant's addiction to pain medication in order to find his pain was under control. An ALJ should not reject a claimant's assertions of disabling pain by relying upon his use of medications to which he is addicted and should have long ago stopped taking, even though the medications may currently provide adequate pain relief. <u>Saleem</u>

<u>v. Chater</u>, 86 F.3d 176, 179 (10th Cir. 1996).  While Defendant contends no medical professional indicated Claimant was addicted to pain medication, she ignores the fact that the ALJ himself stated in the decision that Claimant admitted drug addiction and had obtained treatment for pain medication addiction.  (Tr. 16-18).  He then determined Claimant's pain was well-controlled.  (Tr. 19).  Additionally, Dr. Kenneth Gibson made the decision on October 19, 2011 to stop prescribing pain medications due to "marked med seeking behavior."  (Tr. 643-44).  In light of the policy pronouncement in <u>Saleem</u>, this apparent inconsistency should be re-examined on remand.

### Treating Physician's Opinion

Claimant asserts the ALJ failed to properly consider the opinion of his treating physician, Dr. Joshua Livingston.  Dr. Livingston treated Claimant for neck and back pain monthly since October of 2011.  He completed a medical source statement on November 14, 2012 which limited Claimant to sitting for 2 hours at one time in an 8 hour workday, standing/walking for one hour each at one time in an 8 hour workday, sitting for about 2 hours in the entirety of an 8 hour workday, and standing/walking for less than 2 hours in the entirety of an 8 hour workday.  Claimant would need to alternate between sit/stand/walk every 10-30 minutes.  (Tr.

678).  Claimant could lift/carry up to 5 pounds occasionally, up to 20 pounds infrequently, and never over 20 pounds.  Claimant could occasionally bend and reach and infrequently squat but never crawl or climb.  Claimant would need to take unscheduled breaks for an unstated frequency due to pain and medications.  Claimant had marked limitations in the ability to complete a normal workday and workweek without interruptions from pain or medication based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  He would have moderate limitations in the areas of the ability to maintain attention and concentration for extended periods and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (Tr. 679-80).

Dr. Livingston estimated Claimant would be "off task" about 25% or more of the time.  He would experience good days and bad days and would likely be absent from work more than three times a month.  (Tr. 680).

The ALJ recognized Dr. Livingston's opinion and recited the appropriate standard for evaluating a treating physician's opinion.  (Tr. 19).  He declined to give Dr. Livingson's opinion controlling weight because they appeared to exceed what is reasonable from the medical evidence; his notes seem to indicate Claimant's pain is

under control; his opinions are based upon Claimant's subjective complaints of pain; and Dr. Livingston never ordered any objective testing or reviewed any of Claimant's medical records and was not aware of Claimant's history of narcotic abuse. (Tr. 19-20).

The ALJ is required to give it controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

In his decision, the ALJ in this case stopped his analysis after deciding Dr. Livingston's opinion was not entitled to controlling weight. Even assuming his reasoning was correct, it was error for him to fail to examine whether the opinion was

entitled to reduced weight or proffer a specific explanation for giving the opinion no weight. On remand, the ALJ shall correct these deficiencies in his analysis of Dr. Livingston's opinion.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE